UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SYLVIA PEREZ,

                                      Plaintiff,

                                                              6:16-CV-00795

v.
                                                              (DNH/TWD)

RUBY TUESDAY, ROBERTA BRIGGS,
GARY COLE,

                                      Defendants.
_____

APPEARANCES:

SYLVIA PEREZ
Plaintiff pro se
229 Grand Street
Amsterdam, New York 12010

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for review the pro se complaint of Plaintiff Sylvia Perez

in this employment discrimination action based upon national origin brought pursuant to Title

VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. §2000e, *et seq*., and the New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq*.  (Dkt. No. 1.)  Also

before the Court are Plaintiff's application to proceed *in forma pauperis* ("IFP application") and

motion for appointment of counsel.  (Dkt. Nos. 2 and 3.)

I.      **IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application,

the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No.

2) is granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a pro se complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds pro se, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A pro se complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    PLAINTIFF'S COMPLAINT

Plaintiff has alleged that she suffered an adverse employment action on March 13, 2016, while working for Defendant Ruby Tuesday, Inc. ("Ruby Tuesday") in retaliation for having

3

filed a claim for violation of Title VII based upon national origin and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) against Ruby Tuesday on July 15, 2015.  (Dkt. No. 1 at ¶ 8.)  The claim resulted in a November 6, 2015,  EEOC Settlement Agreement to which Plaintiff and Defendants Ruby Tuesday, Ruby Tuesday Manager Gary Cole ("Cole"), and Ruby Tuesday General Manager Roberta Briggs ("Briggs") were all parties.  *Id*.  The Settlement Agreement did not contain a retaliation provision.  *Id*.

According to Plaintiff, on March 13, 2016, while she was working as Host for Ruby Tuesday, Manager Cole shoved her violently from behind.  *Id*.  When Plaintiff told Cole that he had just pushed her, he did not respond and walked away.  *Id*.  Plaintiff then told the other Manager, Nicole Bahruth that Cole had hit her, and Bahruth did not respond.  *Id*.  In fear of being assaulted again, Plaintiff told Bahruth that she was leaving due to feeling "fight or flight."  *Id*. Plaintiff also immediately contacted the Ruby Tuesday General Manager through the Ruby Tuesdays HotSchedules Messaging and never received a response.  *Id*.

On March 14, 2016, Plaintiff filed a complaint with the Montgomery County Sheriff's Department.  *Id*.  When a Deputy asked her if she wanted to have Cole arrested or to file a complaint, Plaintiff indicated she wanted to file a complaint.  *Id*.  Plaintiff repeatedly contacted the Ruby Tuesday corporate office, leaving voice mails for someone to call her so that she could file an assault complaint.  *Id*.  A Ruby Tuesday employee eventually got back to Plaintiff, and she filed her complaint.  *Id*.  However, Plaintiff never received a response to the complaint.  *Id*.

Plaintiff claims that Cole attacked her and Briggs and Ruby Tuesday failed to follow the company employee complaint process in retaliation for her prior discrimination claim.  Plaintiff

contends that their conduct caused the adverse employment action of wrongful termination/constructive discharge due to hostile and violent workplace conditions. *Id.*

Plaintiff has alleged that she filed charges with the New York State Division of Human Rights or the Equal Employment Opportunity Commission ("EEOC") on April 5, 2016, and that she received an EEOC right-to-sue letter, *id*. at 8,[1] dated April 20, 2016, on or about April 20, 2016. *Id*. at ¶¶ 11 and 12. Plaintiff submitted her complaint to the Clerk for filing in a timely manner on July 1, 2016.[2] (Dkt. No. 1.)

## IV.    ANALYSIS

Plaintiff has asserted retaliation claims against Defendants Ruby Tuesday, Cole, and Briggs under both Title VII and the NYSHRL. Under Title VII and the NYSHRL, "[t]o make out a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013); *see also Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) (the analysis for a claim under the NYSHRL is identical to that for Title VII claims).

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2] Under Title VII, Plaintiff was required to file her lawsuit within ninety days of her receipt of the April 20, 2016, EEOC right-to-sue letter. (Dkt. No. 1 at 8.) *See* 42 U.S.C. § 2000e-5(f)(1).

### A.    Plaintiff's Title VII Retaliation Claim

The Second Circuit has held that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("individuals with supervisory control over a plaintiff may not be held personally liable under Title VII.")).  Therefore, the Court recommends that Plaintiff's Title VII retaliation claim against Defendants Cole and Briggs be dismissed with prejudice.  However, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Plaintiff's Title VII retaliation claim against Defendant Ruby Tuesday based upon national origin be allowed to proceed, and that Ruby Tuesday be directed to respond to Plaintiff's complaint.  In so recommending, the Court expresses no opinion as to whether Plaintiff's Title VII retaliation claim can withstand a properly filed motion to dismiss or for summary judgment.

### B.    Plaintiff's NYSHRL Retaliation Claim

Plaintiff has asserted retaliation claims under the NYSHRL against all three Defendants. Unlike Title VII, the NYSHRL permits individual liability of "any person" for retaliatory acts regardless of whether the individual can be considered an employer.  N.Y. Exec. Law § 296(7) (providing that it is "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she opposed any practices forbidden under the [NYSHRL]").  *See Torres v. New York Methodist*

6

*Hospital*, No. 15 CV 1264 (PKC) (PK), 2016 WL 3561705, at * 12 (E.D.N.Y. Jan. 1, 2016).[3]  In addition, under Exec. Law § 296(6), it is an "unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

Construed liberally, Plaintiff's complaint alleges that Ruby Tuesday Manager Cole engaged in an unlawful discriminatory practice by violently shoving Plaintiff from behind in retaliation for her earlier discrimination complaint that was the subject of an EEOC Settlement Agreement, in violation of § 296(7).  (Dkt. No. 1 at ¶ 8.)  Plaintiff's claim that General Manager Briggs knowingly and intentionally deviated from the established Ruby Tuesday employee complaint process in retaliation for Plaintiff's earlier EEOC complaint, also construed liberally, arguably falls under § 296(6).

Although Plaintiff has alleged claims under the NYSHRL, the NYSHRL contains election-of-remedies provisions that, if applicable, would constitute a jurisdictional impediment to the assertion of those claims.  Exec. Law § 297(9) states that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person has filed a complaint hereunder or with any local commission on human rights . . . ."  "A complaint filed by the [EEOC] to comply with the requirements of [Title VII] shall not constitute the filing of a complaint . . . ."  Exec. Law § 297(9).

---

[3]  Copies of the unpublished decision in *Torres* will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Paragraph 10 of the form Title VII complaint utilized by Plaintiff states "I filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment Opportunity Commission regarding the alleged discriminatory acts on or about: [date]." Plaintiff has alleged that she filed charges on April 5, 2016, but has not specifically alleged that she filed a complaint with the New York Human Rights Division. (Dkt. No. 1 at ¶ 10.) Furthermore, she received a right-to-sue letter from the EEOC, reflecting the filing of a complaint with the EEOC. (Dkt. No. 1 at 8.) Therefore, there is no basis upon which to determine with certainty whether Plaintiff has made an election-of-remedies with respect to her retaliation claim against Ruby Tuesday, Cole, and Briggs under the NYSHRL.

Because the analysis for a claim under the NYSHRL is identical to that for Title VII claims, *Dawson*, 398 F.3d at 217, the Court recommends that Plaintiff be allowed to proceed with her claim against Ruby Tuesday under the NYSHRL as it did with Plaintiff's Title VII claim. The Court further recommends that, given Exec. Law §§ 296(6) and 296(7), Plaintiff be allowed to proceed with her claims against Cole and Briggs under the NYSHRL. As with Plaintiff's Title VII claim, the Court expresses no opinion as to whether Plaintiff's NYSHRL retaliation claim can withstand a properly filed motion to dismiss or for summary judgment.

## V.    APPLICATION FOR APPOINTMENT OF COUNSEL

Plaintiff has moved for the appointment of counsel. (Dkt. No. 3.) "The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Before appointment of counsel is even considered, an indigent person must demonstrate that she or he is unable to obtain counsel. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has failed to attach documentation evincing an attempt to obtain counsel, such as

correspondence from attorneys declining to represent her in the case, nor has she documented any effort made to secure counsel on her own, such as listing the names of attorneys she has contacted and their reasons for not accepting her case.

In addition, "in deciding whether to appoint counsel . . . the [court] should first determine whether the indigent's position seems likely to be of substance." *Hodge*, 802 F.2d at 61.  Once this threshold is met, the court is required to consider other criteria "such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would probably lead to a more just resolution of the dispute." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  A more fully developed record is necessary before an assessment can be made as to whether counsel should be appointed in this case.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel.)

In consideration of the foregoing, Plaintiff's motion for appointment of counsel is denied without prejudice at this time.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that Plaintiff's Title VII claim be **DISMISSED WITH PREJUDICE** as against Defendants Briggs and Cole; and it is further

**RECOMMENDED**, that the action otherwise be allowed to proceed against Defendants Ruby Tuesday, Cole, and Briggs, and that Defendants, or their counsel, be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is hereby

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**

**WITHOUT PREJUDICE**; and it is hereby

**ORDERED**, that the Clerk mail Plaintiff copies of this Order and Report-

Recommendation and the unpublished decision in *Torres v. New York Methodist Hospital*, No.

15 CV 1264 (PKC) (PK), 2016 WL 3561705 (E.D.N.Y. Jan. 1, 2016) in accordance with *LeBron*

*v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).   .

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated:   July 14, 2016
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2016 WL 3561705
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Nellie Torres, Plaintiff,

v.

New York Methodist Hospital, Stanely
Santorelli, and Yvelisse Torres, Defendants.

15 CV 1264 (PKC) (PK)
|
Signed 01/07/2016

### MEMORANDUM & ORDER

PAMELA K. CHEN, United States District Judge

**\*1** Plaintiff Nellie Torres commenced this action on March 11, 2015, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 (1),(6), and (7) *et seq.* ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8−07(a)(1), (6) and (7) *et seq.*, alleging sexual harassment, gender discrimination, hostile work environment, retaliation, and constructive discharge claims against Defendants New York Methodist Hospital ("NYMH"), Stanley Santorelli ("Dr. Santorelli"), and Yvelisse Torres ("Defendant Torres") (collectively, "Defendants"). (Dkt. 1 ("Complaint" or "Compl.") ¶¶ 1, 269−72, 295−98, 327.) On July 6, 2015, Defendants moved, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), to dismiss as untimely and unexhausted any claim premised on (i) allegations concerning incidents prior to April 2011, and (ii) conduct by individuals other than Dr. Santorelli or Defendant Torres, and further to strike related allegations pursuant to FRCP 12(f). (Dkts. 17; 20.) Defendants' motion also seeks to dismiss claims against Dr. Santorelli in his individual capacity under the NYSHRL and NYCHRL §§ 8−107(a)(6), (7). (Dkt. 20 at 21−25.) [1]

For the reasons discussed below, the Court finds the matter fully briefed and oral argument unnecessary (*see* Dkt. 22), and concludes based on the parties' submissions that Defendants' motion be granted in part and denied in part.

### BACKGROUND

Plaintiff was employed by NYMH in the Department of Nursing as a Nursing Assistant from 1992 until 2000, and as a Nurse Technician from 1994 until 2000. (Compl. ¶ 17.) [2] From 2000 until her resignation on February 17, 2015, Plaintiff worked as a Medical Assistant in the Department of Endoscopy. (*Id.* ¶¶ 17−18.) Defendant Torres was Plaintiff's supervisor in the Department of Endoscopy. (*Id.* ¶¶ 14, 25−26.) Dr. Santorelli is an anesthesiologist who works at, and is alleged to be an agent of, NYMH. (*Id.* ¶¶ 13, 25, 98.)

In 1993 and again in 1996, while working in the Department of Nursing, Plaintiff was subjected to unwelcome sexual advances by two doctors. (*Id.* ¶¶ 19−24.) She reported the 1996 incident to her supervisor at the Department of Nursing, who responded that Plaintiff's appearance and demeanor invited such behavior. (*Id.* ¶¶ 22−24.) [3]

After Plaintiff transferred to the Department of Endoscopy in 2000, "Dr. Santorelli subjected [her] to harassment on a continual basis." (*Id.* ¶ 25.) Plaintiff's Complaint chronicles a litany of sexual comments or misconduct on the part of Dr. Santorelli and other Department of Endoscopy personnel between 2002 and 2015. Plaintiff repeatedly reported Dr. Santorelli's conduct to Defendant Torres, who ignored Plaintiff's complaints or threatened Plaintiff with termination if she continued to complain. (*See, e.g., id.* ¶¶ 26−28.) Plaintiff's allegations regarding the sexual harassment she experienced and NYMH's failure to respond to her complaints include, but are not limited to, the following:

**\*2** • In 2002, Dr. Santorelli told Plaintiff in the presence of another doctor that he wanted her to perform oral sex. Plaintiff reported this to Defendant Torres, who replied that Defendant Torres "did not want to hear" about it. Defendant Torres noted in Plaintiff's 2002 performance review that Plaintiff needed to be "less critical" of her co-workers. (*Id.* ¶¶ 29−32.)

Case 6:16-cv-00795-DNH-TWD    Document 5    Filed 07/14/16    Page 12 of 24

• "On multiple occasions in 2003," Dr. Santorelli told Plaintiff that he " 'would love' to have Plaintiff's lips on him, giving him a 'blow job.' " When Plaintiff attempted to report these incidents, Defendant Torres waved her hands in Plaintiff's face and walked away. (*Id.* ¶¶ 35–37.)

• "Throughout" 2003 to 2006, Dr. Santorelli continued to request oral sex from Plaintiff. (*Id.* ¶ 38.) Dr. Santorelli "often" simulated the performance of oral sex toward another doctor. (*Id.* ¶ 48.) Dr. Santorelli also told Plaintiff, at times in the presence of another doctor, that Plaintiff needed to be "screwed all night" and that she must be "great in bed[.]" (*Id.* ¶¶ 39, 43, 45.) Dr. Santorelli "often" leered at Plaintiff's breasts, and stated "Yum Yum. Look at those babies. I would love to squeeze them." (*Id.* ¶ 49.) Plaintiff continued to make complaints to Defendant Torres, who told Plaintiff that she would lose her job if she continued to "make trouble." (*Id.* ¶¶ 40–>41.) Defendant Torres also covered her ears with her hands and stated "See? I can't hear anything." (*Id.* ¶ 47.)

• In 2007, while another doctor was present, Dr. Santorelli requested oral sex from Plaintiff and demonstrated the motions. (*Id.* ¶¶ 50–51.) Also in 2007, an operating room technician told Plaintiff that he should "give it to her," while she was opening the unit in the morning. (*Id.* ¶ 55.) Defendant Torres continued to ignore Plaintiff's complaints. (*Id.* ¶¶ 53–54, 56.)

• In 2008, while working on an anesthetized patient with another doctor, Dr. Santorelli simulated masturbation with a filled syringe, shot the liquid onto Plaintiff's chest, right shoulder, and face, and stated "Ahh, I just came all over you[.]" (*Id.* ¶¶ 61–66.) When Plaintiff called for Defendant Torres' assistance, Defendant Torres covered her ears, stated "I can't hear anything," and walked away. (*Id.* ¶¶ 68–70.) This incident became the subject of jokes among Department of Endoscopy employees. (*Id.* ¶¶ 73–75.)

• "Throughout" 2009 and 2010, Dr. Santorelli moaned and called Plaintiff "Mama." (*Id.* ¶¶ 76–78.) He again requested oral sex from Plaintiff "[t]hroughout 2010[.]" (*Id.* ¶ 79.)

• In 2011, Dr. Santorelli commented that Plaintiff must be "great in bed" and that she was a "hot mama." (*Id.* ¶ 81.) He remarked that the person she had been dating could not handle her sexuality. Dr. Santorelli also "frequently" stood on his toes to look down Plaintiff's shirt and said "Ooh." (*Id.* ¶¶ 82–83.)

• In 2012, Dr. Santorelli lowered his pants in front of Plaintiff, told her he was getting a rectal exam, and that he expected it to feel good. He then exposed his buttocks and asked Plaintiff if she "wanted some of this." (*Id.* ¶¶ 84–86.) Another doctor told Plaintiff, in front of an x-ray technician that Plaintiff had sexually transmitted diseases in her throat. (*Id.* ¶¶ 89–>90.) Defendant Torres continued to ignore or dismiss Plaintiff's complaints. (*Id.* ¶¶ 87–88, 91–92.)

• In 2013, an employee who delivered linen to the Department of Endoscopy told Plaintiff that he wanted to "give it to her." (*Id.* ¶¶ 93– 94.)

**\*3** • In January 2013, Dr. Santorelli told Plaintiff that he wanted to "try [her] out" and that they would "go at it all night[.]" (*Id.* ¶¶ 119–>20.) When Plaintiff complained about Dr. Santorelli's behavior in 2013, Defendant Torres told Plaintiff to "keep her mouth quiet," that she was "looking to get fired," and that she was a "pain in the ass." (*Id.* ¶¶ 99– 102.)

• In November 2013, Dr. Santorelli entered a procedure room and made sexual remarks to Plaintiff. He told her to "lighten up" and brushed his crotch against her. Dr. Santorelli continued to brush his crotch against Plaintiff almost every time he passed her. (*Id.* ¶¶ 103–05, 122.) Defendant Torres responded to Plaintiff's complaints by telling her to "stop being a pain in the ass" and telling her that she would be terminated if she filed a report outside the unit that would make the unit look bad. (*Id.* ¶¶ 109–16, 125, 130–>32.)

Plaintiff further alleges that in January 2014, Plaintiff "made clear" to Defendant Torres that she intended to lodge a complaint with Human Resources if Defendant Torres did not address Dr. Santorelli's conduct. (*Id.* ¶¶ 134– 35.) On January 23, 2014, Defendant Torres insisted that Plaintiff train a new registered nurse ("RN"), even though Plaintiff and Plaintiff's union representative informed Defendant Torres that as a nursing assistant, Plaintiff was prohibited from training RNs. (*Id.* ¶¶

136−50, 155−157.) Defendant Torres then issued a written warning that Plaintiff would be suspended or terminated if she refused to train the RN. (*Id.* ¶¶ 160−60.)

On February 16, 2014, Plaintiff submitted a letter to Human Resources and her union, detailing her complaints of sexual harassment and retaliation. (*Id.* ¶ 162.) Following Plaintiff's letter, Defendant Torres called Plaintiff a "viper," and instructed Department of Endoscopy personnel to isolate Plaintiff socially, and to be wary of Plaintiff because she was trying to "make trouble." (*Id.* ¶¶ 163−64, 176−78.) Defendant Torres also demanded that Plaintiff work overtime. (*Id.* ¶¶ 180, 182.)

On March 3, 2014, Dr. Santorelli entered a procedure room where Plaintiff was working and walked toward Plaintiff, stating "Look at her there sitting with her legs crossed. Wouldn't she like to see me gone from here?" (*Id.* ¶¶ 167−>68.) On March 7, 2014, when Plaintiff asked to be transferred to a different assignment to avoid working with Dr. Santorelli, other Department of Endoscopy employees berated and mocked her. (*Id.* ¶¶ 170−74.)

In late March 2014, Plaintiff participated in meetings with NYMH management about her complaints. At the meetings, NYMH officials accused Plaintiff of fabricating the reported incidents, and verbally attacked her. (*Id.* ¶¶ 183−>86, 193, 196.) Plaintiff began to experience chest pains during one such meeting on March 28, 2014. She was admitted later that day to Maimonides Hospital's intensive care and cardiac unit for three days, where she was diagnosed with hypertension urgency." (*Id.* ¶¶ 200−03.) Plaintiff took a medical leave of absence from that day until May 1, 2014. (*Id.* ¶¶ 204, 208.) When Plaintiff returned to work on May 1, 2014, Dr. Santorelli stated that he was "untouchable no matter how many complaints" were filed against him. (*Id.* ¶¶ 208.)

On August 4, 2014, Defendant Torres issued Plaintiff three warnings based on false complaints that Plaintiff had left patients unattended, and had left work early. (*Id.* ¶¶ 219−21.) In September 2014, Defendant Torres denied Plaintiff's vacation requests, removed Plaintiff's vacation days from the calendar, and granted vacation requests for the same dates to employees with less seniority. (*Id.* ¶¶ 231−34.) Defendant Torres also denied Plaintiff previously-approved vacation dates during the December 2014 to January 2015 holiday season. (*Id.* ¶ 239.) In January 2015, Defendant Torres issued Plaintiff

an "Anecdotal Note" for not wearing proper attire. (*Id.* ¶¶ 240− 43.)

 **\*4**  Plaintiff's Complaint also describes harassing or retaliatory conduct in 2014 and 2015 that involved Department of Endoscopy personnel other than Dr. Santorelli or Defendant Torres. For instance, on July 10, 2014, the Chief of the Department of Endoscopy yelled at Plaintiff and told her that he would make false accusations about Plaintiff until she is terminated. (*Id.* ¶¶ 210− 11.) On July 25, 2014, another doctor massaged Plaintiff's hand while she was working with a patient and asked her to position herself so he can look at her "lovely face." (*Id.* ¶¶ 214−16.) In August 2014, two doctors made inappropriate sexual remarks. (*Id.* ¶¶ 222, 224−25.) Plaintiff was mocked when she complained about these incidents. (*Id.* ¶¶ 223, 225, 227−29.)

On February 2, 2015, Plaintiff submitted a complaint to NYMH about Dr. Santorelli's continued presence in her unit. (*Id.* ¶ 244.) NYMH's Director of Employee Relations responded on February 5, 2015 by warning Plaintiff of "chronic misuse of the Hospital's complaint procedure," and stating that employees who "fil[e] frivolous or unfounded allegations" "may be subject to immediate discipline." (*Id.* ¶ 245.) Plaintiff submitted another complaint regarding this response and Defendant Torres's conduct to NYMH on February 10, 2015. (*Id.* ¶ 250.)

On February 10, 2015, Plaintiff consulted with her psychotherapist, who diagnosed Plaintiff with general anxiety disorder, and recommended that Plaintiff not work for one week. (*Id.* ¶ 251.) On the same date, Plaintiff received urgent care and was diagnosed with anxiety, chronic depression, and insomnia, for which she was prescribed Xansa and Paxil. (*Id.*)

On February 17, 2015, Plaintiff resigned from her employment at NYMH. (*Id.* ¶ 252.)

## DISCUSSION

### I. Legal Standard on a Motion to Dismiss

To withstand a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In evaluating a FRCP 12(b)(6) motion,

a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* at 555–56; *see Nielsen*, 746 F.3d at 62; *Cleveland*, 448 F.3d at 521. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 555 U.S. at 557). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Id.* at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. Of Educ. of City School Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).

## II. Exhaustion of Title VII Claims Against NYMH [4]

**\*5** Before commencing a Title VII suit in federal court, the claims forming the basis of the suit must first be presented in a complaint to the EEOC or the equivalent State agency within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1); *Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). The Court lacks jurisdiction over Title VII claims that do not meet this requirement or are not "reasonably related" to the claims made in the charge. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Zagaja v. Village of Freeport*, 10 CV 3660, 2015 WL 3507353, at *13–14 (E.D.N.Y. June 3, 2015).

"A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin*, 335 F.3d at 200–01 (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (claim is reasonably related where "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised"); *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 393 (E.D.N.Y. 2014)

(claims not explicitly raised in a charge may be considered "when the facts in the charge lodged with the EEOC would have prompted the EEOC to investigate the unexhausted claim"). The focus of the inquiry into whether a claim pled in a civil action is "reasonably related" to an EEOC charge " 'should be on the factual allegations made in the [EEOC] charge itself' " and on whether those allegations "gave [the EEOC] 'adequate notice to investigate' " the claims asserted in court. *Williams*, 458 F.3d at 70 (quoting *Deravin*, 335 F.3d at 201–02). This exception to Title VII's exhaustion requirement is understood to be "essentially an allowance of loose pleading ... based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination" claimed by a plaintiff. *Deravin*, 335 F.3d at 201 (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)).

Defendants presently seek to dismiss as unexhausted Plaintiff's Title VII claims against NYMH insofar as they are premised on (1) conduct that occurred more than three years before Plaintiff filed her EEOC Charge, and (2) conduct of medical professionals or NYMH personnel other than Dr. Santorelli or Defendant Torres. (Dkt. 20 at 12−13, 18−21.) Plaintiff filed a charge of discrimination with the EEOC on April 1, 2014, alleging sexual harassment and retaliation. (Compl. ¶ 6; Dkt. 18−2 at 3−4 ("Charge").) [5] In her Charge, Plaintiff specified that February 3, 2014 was the earliest date on which discrimination took place, and the latest date of discrimination was March 21, 2014, but that discrimination was "continuing." (Dkt. 18−2 at 3.) Plaintiff included a narrative of the alleged discrimination, which states in part:

> I began my employment in 1992 as a Nurse Assistant. In 2000 I became a Medical Assistant assigned to the Endoscopy Unit. I performed my job functions satisfactorily. I have been the victim of harassment and have been working under a hostile work environment by Yvelise Torres, Director of Endoscopy. I have been the victim of sexual harassment by Doctor Stanley Santorelli for approximately 3−years. I have

complained to Ms. Torres about each incident and inappropriate comments that were sexually explicit and unwelcomed. Each time Ms. Torres ignored my complaints and did nothing about it. To this day Dr. Santorelli continues to constantly make inappropriate comments and sexual gestures even though I asked him to stop.

**\*6** (*Id.*) Plaintiff also indicated that on March 7, 2014, Dr. Santorelli approached Plaintiff and said, "look at her with her legs crossed," and "wouldn't she like for me to leave here[.]" (*Id.* at 4.)[6] Plaintiff further reported that "Dr. Santorelli continues to harass" her and that "the harassment and hostile work environment has increased[.]" In addition, Plaintiff stated that a nurse manager and patients have complained about Dr. Santorelli's "unwelcome behavior." Plaintiff indicated that Defendant Torres and other staff members witnessed Dr. Santorelli's behavior, but that "everyone just laughs[.] Plaintiff further stated that she reported Dr. Santorelli's "inappropriate behavior" to the Director of Employee Relations, and to another doctor who was Dr. Santorelli's "boss." Plaintiff alleged that Defendant Torres spoke negatively about Plaintiff to other staff members, instructed people not to socialize with her, and tried to isolate Plaintiff. (*Id.*) Plaintiff also reported that Defendant Torres "wrote [Plaintiff] up for insubordination" after Plaintiff refused to train a new RN. (*Id.* at 3.)

Taken together, Plaintiff's allegations in her Charge were sufficient to exhaust at least part of her Title VII hostile work environment claim. Plaintiff's assertion that she had been sexual harassed by Dr. Santorelli for approximately three years, coupled with her allegation regarding Dr. Santorelli's March 7, 2014 conduct, were sufficient to put the EEOC on notice to investigate sexual misconduct involving Dr. Santorelli over the three years preceding the April 1, 2014 Charge. In addition, Plaintiff's allegations that Defendant Torres and other supervising staff at NYMH failed to take corrective action to remedy Plaintiff's complaints of sexual harassment, and that Plaintiff had been working under a hostile work environment under Defendant Torres, provided the EEOC with sufficient information for the agency to investigate a claim that NYMH condoned a hostile

working environment in the Department of Endoscopy. Thus, Plaintiff has clearly exhausted her hostile work environment claim based on sexual harassment by Dr. Santorelli after April 1, 2011, and the failure of NYMH management, including but not limited to Defendant Torres, to respond to her complaints of harassment.[7]

As Defendants correctly observe, however, Plaintiff's Complaint "dramatically expand[s] the time period referenced in her Charge" and the "identity of the alleged participants presented to the EEOC for investigation." (Dkt. 20 at 10.) Plaintiff's Complaint contains allegations of a hostile work environment over a far more expansive time period than the three years asserted in the Charge, claiming instead that it began decades earlier in 1993. (*E.g.*, Compl. ¶¶ 19−>24.) The Charge also failed to mention any of Dr. Santorelli's pre-April 2011 behavior that is now asserted in her Complaint. Given the Charge's specification of a three-year time frame during which the alleged sexual harassment occurred, the Complaint's allegations of a hostile work environment spanning over 21 years—well beyond the three years alleged in the Charge—do not reasonably fall within the scope of the EEOC's investigation. *See Robinson v. Getingel Castle, Inc.*, 02 CV 6049, 2005 WL 272964, at \*5 (W.D.N.Y. Feb. 2, 2005) (since plaintiff limited her hostile work environment claim to a specific time period, allegations that stretch back to 30 years before that period were not within the scope of the agency's investigation); *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 133−35 (E.D.N.Y. 2002) (where plaintiff's claims of a hostile work environment alleged in the charge were limited to a particular time frame, hostile work environment claims that predated that time frame were not "reasonably related" to the charged claims).

**\*7** Similarly, though Plaintiff's Complaint includes allegations of sexual misconduct by various non-defendants, nothing in the Charge could have alerted the agency to investigate sexual harassment by individuals other than Dr. Santorelli for which NYMH could be held liable. *See Deras v. Metro. Transp. Auth.*, 11 CV 5912, 2013 WL 1193000, at \*5 (E.D.N.Y. Mar. 22, 2013). The EEOC cannot be expected to meaningfully investigate generalized allegations of misconduct, unadorned by factual detail that would provide a clue as to the acts that contributed to the alleged hostile work environment or the identities of personnel who were allegedly involved. *See Briggs*, 233 F. Supp. at 376 (while a plaintiff "need not

list every detail of her alleged discriminatory treatment [therein], a charge ... needs to provide sufficient specifics to afford the EEOC a reasonable opportunity to fulfill its obligations to investigate the complaint and attempt to mediate a resolution"); *Samborski v. West Valley Nuclear Servs. Co.*, 99 CV 213E, 2002 WL 1477610, at *4 (W.D.N.Y. 2002) (allegations of "sexual harassment" that created a "hostile environment" are boilerplate terms that fail to inform the EEOC of any specific instances of harassment). Were the courts to permit "vague, general allegations, quite incapable of inviting a meaningful EEOC response, to ... predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate[,] and Title VII's investigatory and mediation goals would be defeated." *Butts*, 990 F.2d at 1403. Accordingly, because Plaintiff's allegations regarding conduct that precede April 2011 or sexual harassment by individuals other than Dr. Santorelli are neither contained in her Charge nor reasonably related thereto, she has failed to exhaust her administrative remedies with respect to these claims, and they are dismissed.[8]

## III. Timeliness of Plaintiff's NYSHRL and NYCHRL Claims

Defendants further contend that Plaintiff's NYSHRL and NYCHRL claims are time-barred to the extent that they are premised on incidents pre-dating April 2011. (*See* Dkt. 20 at 7–8, 13–18.)[9] With certain limited exceptions as set forth below, the Court disagrees.

Under the NYSHRL and NYCHRL, the statute of limitations is three years. *See* N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–502(d); *see also Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). However, the limitations period is tolled during the pendency of a complaint before the EEOC. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 207 (E.D.N.Y. 2014); *see also DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("Claims brought under the NYSHRL and NYCHRL are subject to a three-year statute of limitations, which is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter.").

**\*8** Here, Plaintiff filed her Charge on April 1, 2014, and filed her Complaint on March 11, 2015. The Complaint and motion papers before the Court do not set forth how long Plaintiff's claim was pending before the EEOC, or attach the notice of right to sue letter. Thus, absent the applicability of any tolling or exceptions, all claims accruing after March 11, 2012—three years prior to the filing of the Complaint—are timely under the NYSHRL and NYCHRL. For reasons that are not wholly clear to the Court, Defendants fail to reference the March 11, 2012 statutory date, and limit their timeliness arguments to conduct prior to April 2011—three years prior to the filing of her EEOC Charge. (*See, e.g.*, Dkt. 20 at 8, 11 ("Defendants do not presently challenge Plaintiff's ability to pursue claims based on allegations concerning 2011 and thereafter ...").) Since Defendants do not contest the timeliness of NYSHRL and NYCHRL claims based on conduct post-dating April 2011, the Court focuses its analysis on the alleged conduct prior to April 2011.

Plaintiff argues that her hostile work environment claims premised on pre-April 2011 conduct are saved by the continuing violation doctrine. (Dkt. 23 at 9–14.) Ordinarily, a plaintiff may not recover for claims of discrimination based on discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire" that occurred outside the statutory time period, even if other acts of discrimination occurred within the statutory time period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 (2002) ("[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period"). By contrast, the continuing violation doctrine provides that if a plaintiff files a complaint that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely even if they would be untimely standing alone. *Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."); *Patterson*, 375 F.3d at 220; *Emmons*, 715 F. Supp. 2d at 412. The continuing violation doctrine is available with respect to harassment and hostile work environment claims because "[t]heir very nature involves repeated conduct. The 'unlawful employment practice' ... cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its

own." *Morgan*, 536 U.S. at 115; *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (provided that "an act contributing to [the] hostile [work] environment takes place within the statutory time period", "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability") (quoting *Morgan*, 536 U.S. at 105). In deciding whether alleged sexual harassment that occurs both before and after the time-barred date are part of the same violation, courts are required "to make an individualized assessment of whether incidents and episodes are related" such that they can be considered "part of the same actionable hostile work environment practice." *McGullam*, 609 F.3d at 76–77.

Courts are divided on whether the narrower definition of the continuing violation doctrine under *Morgan*, or a prior, more generous standard that focuses on whether the discriminatory practice had a continuing impact on the complainant, applies to discrimination claims under the NYSHRL and NYCHRL. *See Kalola v. Int'l Bus. Machs. Corp.*, 13 CV 7339, 2015 WL 861718, at *9 (S.D.N.Y. Feb. 3, 2015) (noting split in authority as to whether analysis of a continuing violation under New York law should proceed according to a broader standard). [10] But, although time-barred discrete acts can be considered timely under a more lenient standard for State law claims, a plaintiff must still show that "specific and related instances of discrimination [were] permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Dimitracopoulos*, 26 F. Supp. 3d at 212 (quoting *Fitzgerald*, 251 F.3d at 359).

 **\*9** Here, regardless of which continuing violation doctrine is applied, the result is the same. Plaintiff asserts that her pre-April 2011 allegations "demonstrate a consistent pattern of sexually offensive conduct, as well as a practice of condoning such conduct dating back to 1993" and are part of Defendants' continuing practice of subjecting Plaintiff to a discriminatory hostile work environment. (Dkt. 23 at 10–12). The Court agrees that Plaintiff's hostile work environment claims permit consideration of the large majority of conduct alleged prior to April 2011. Plaintiff's timely, *i.e.,* post-April 2011, allegations describe, *inter alia,* sexual remarks and gestures by Dr. Santorelli, as well as Defendant Torres' dismissive or threatening responses to Plaintiff's repeated complaints of inappropriate sexual

conduct. (*See, e.g.*, Compl. ¶¶ 99–102, 103–16, 119–25, 130–32, 167–69.) Her pre-April 2011 allegations are similar in nature to the timely allegations, both focusing on sexually inappropriate comments and conduct by the same harasser, Dr. Santorelli, and the failure of the same supervisor, Defendant Torres, to address Plaintiff's complaints. *See McGullam*, 609 F.3d at 78 (consideringsame type of harassing acts committed by the same harasser both before and after the limitations period "as part of the same hostile work environment claim") (citation omitted). Based on the similarity of the conduct, perpetrated by the same actors, Plaintiff has sufficiently alleged that the pre-April 2011 conduct was part and parcel of a single pattern and course of harassing conduct that began before and continued into the statute of limitations periods.

Defendants contend that the continuing violation doctrine is inapplicable because the pre-April 2011 allegations are generic, punctuated by large gaps in time, and implicate actors other than Dr. Santorelli and Defendant Torres. The Court disagrees. First, the pre-April 2011 allegations are hardly generic. Indeed, Plaintiff's Complaint details the context and content of Dr. Santorelli's sexual comments, and specifically describe Dr. Santorelli's behavior. (*See, e.g.*, *id.* ¶¶ 29 (alleging that in 2002, Dr. Santorelli requested a "blow job" from Plaintiff in the presence of another doctor), 35 (alleging that in 2003, Dr. Santorelli again requested oral sex, stating that he "would love" to have Plaintiff's lips on him), 38–49 (alleging that throughout 2003 and 2006, Dr. Santorelli requested "blow jobs" from Plaintiff, simulated the performance of oral sex, remarked that Plaintiff deserved to be "screwed all night[,]" and commented that he "would love to squeeze" Plaintiff's breasts)), 50 (alleging that in 2007, Dr. Santorelli told Plaintiff, "wouldn't I love to have those lips on me giving me a blow" while demonstrating the movements); 63–66 (alleging that in 2008, Dr. Santorelli simulated masturbation with a filled syringe, and squirted liquid on Plaintiff's chest, right shoulder, and face, stating that "Ahh, I just came all over you"), 77–78 (alleging that throughout 2009 and 2010, Dr. Santorelli moaned and said "Mama" to Plaintiff), 81 (alleging that in 2011, Dr. Santorelli told Plaintiff that she must be "great in bed").) Plaintiff's Complaint also includes particular phrases and actions used by Defendant Torres in response to Plaintiff's complaints. (*See, e.g.*, *id.* ¶¶ 27–28, 30, 37, 41, 47, 54, 56, 60, 69–70.) In sum, these allegations provide ample notice of the factual underpinnings of Plaintiff's claims of

harassment for the Court to conclude that the pre-April 2011 conduct is related to the timely alleged conduct.

Second, although some of the specifically alleged pre-April 2011 incidents are separated by time gaps, [11] Plaintiff has sufficiently alleged that sexual harassment persisted "on a continual basis" throughout the pre-limitations period and was regular enough to conclude, at least at this juncture, that they may have been part of the same pattern of discrimination described in Plaintiff's timely allegations. (*See, e.g., id.* ¶¶ 25, 29, 35, 38–39, 43, 45, 48–50, 64–66, 76–779, 81–83); *see Scott-Iverson v. Indep. Health Ass'n*, 13 CV 0451, 2014 WL 3107289, at *4 (W.D.N.Y. July 7, 2014); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 406 (S.D.N.Y. 2012). Contrary to Defendants' position, "[t]he fact that there may be gaps of ... years between some allegations is not necessarily fatal; an 'incident-free interval does not preclude relatedness,' although it may 'render[ ] less plausible' the possibility that several comments or acts are related." *Scott-Iverson*, 2014 WL 3107289, at *4 (quoting *McGullam*, 609 F.3d at 78). Where, as here, the purported disparate acts are numerous and of the same nature, the "incident-free interval[s]" do not undermine Plaintiff's claim. Plaintiff alleges that certain conduct, including Dr. Santorelli's requests for oral sex, occurred "on multiple occasions," "throughout" the years, and continued unremedied for a significant period of time. (*E.g.*, Compl. ¶¶ 35, 38, 48, 50, 79); *cf., Norman v. Metro. Transit Auth.*, 13 CV 1183, 2014 WL 4628823, at *4 (E.D.N.Y. Aug. 1, 2014), *report and recommendation adopted*, 2014 WL 4628848 (E.D.N.Y. Sept. 15, 2014) (three-year discontinuity between defendant's comments precluded application of continuing violation rule where the allegations did not appear to reflect an ongoing policy, and plaintiff failed to adequately plead that the challenged actions were allowed to continue for a significant period); *Lugo v. City of New York*, 08 CV 5250, 2012 WL 3202969, at *3 (E.D.N.Y. Aug. 3, 2012) (no available facts suggested that acts separated by two years were connected to one another). Furthermore, this is not a case where Plaintiff's problems were ameliorated during the intervening incident-free periods. *See Kalola*, 2015 WL 861718, at *10. Given the severity and regularity of the other comments and acts that Plaintiff alleges, Plaintiff is entitled, at this stage of the litigation, to the reasonable inferences that the sexual harassment occurred with sufficient frequency prior to April 2011 to support a cause of action under the NYSHRL and

NYCHRL for hostile work environment. In reaching this conclusion, the Court is mindful that "there is no precise test for determining whether conduct is severe or pervasive enough to constitute a hostile work environment", and as such, this is a fact-bound area of law that is particularly ill-suited to dismissal at the pleading stage. *Scott-Iverson*, 2014 WL 3107289, at *5 (quoting *Williams*, 154 F. Supp. 2d at 822).

**\*10** Third, the inclusion of allegations regarding individuals other than Dr. Santorelli and Defendant Torres does not alter the Court's conclusion that the pre-April 2011 allegations were part of a single actionable hostile work environment claim. Plaintiff's allegations that certain non-defendant individuals were present during Dr. Santorelli's harassing conduct provide relevant context to Plaintiff's claims that a hostile work environment existed, unchecked by NYMH. (*E.g.*, Compl. ¶¶ 29, 43, 51, 61.) The few allegations regarding the encouraging behavior or affirmative misconduct by non-Defendants also provide relevant background regarding the environment and the conduct tolerated at NYMH. (*E.g.*, *id.* ¶¶ 48, 55–56, 73–75.)

Nevertheless, the Court agrees with Defendants that the conduct alleged in 1993 and 1996 are insufficiently related to the conduct within the statutory time period. The alleged conduct involved different perpetrators and occurred while Plaintiff was in the Department of Nursing, before she was transferred to the hospital's Department of Endoscopy, where she was allegedly subjected to harassment by Dr. Santorelli and supervised by Defendant Torres. (*Id.* ¶¶ 19–>26). Plaintiff has not alleged that the individuals involved in the 1993 or 1996 again harassed her after she was transferred. In view of the differing environment and actors implicated, the 1993 and 1996 conduct cannot be considered part of the "continuing" hostile work environment in the Department of Endoscopy. *See McGullam*, 609 F.3d at 78 (concluding that conduct within statutory time period was not sufficiently related to alleged conduct prior to the statutory period in part because the prior conduct occurred in another department); *Anderson*, 850 F. Supp. 2d at 406 (earlier episodes were time barred under the NYSHRL and NYCHRL because they involved wholly different employees). Even so, these time-barred claims may serve "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113; *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d

534, 545 (E.D.N.Y. 2014) (time-barred incidents that are not independently actionable events still may be considered as relevant background evidence); *Ramirez v. N.Y. Presbyterian Hosp.*, 129 F. Supp.2d 676, 680 (S.D.N.Y. 2001) ("[C]learly established precedent dictates that '[a] discriminatory act which is not made the basis for a timely charge' can still be 'relevant background'...."). [12]

## IV. Dr. Santorelli's Individual Liability Under the NYSHRL and NYCHRL

**\*11** Defendants also move to partially dismiss Plaintiff's NYSHRL and NYCHRL claims against Dr. Santorelli in his individual capacity. [13] Unlike Title VII, the NYSHRL and NYCHRL provide for the imposition of liability on individual defendants, either directly, or as an aider and abettor of unlawful discrimination or retaliation. *See Lore*, 670 F.3d at 169; *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Plaintiff alleges that Dr. Santorelli is responsible under the NYSHRL and NYCHRL for gender discrimination, hostile work environment, and retaliation, and aiding and abetting the same.

### A. Direct Liability for Discrimination and Hostile Work Environment

The NYCHRL provides a broad basis for direct individual liability under Section 8–107(1)(a), which makes it "an unlawful discriminatory practice" for "an employer *or an employee or agent thereof*, because of the ... gender ... of any person, ... to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a) (emphasis added); *see also Malena*, 886 F. Supp. 2d at 366. Defendants concede that Plaintiff properly asserts a claim against Dr. Santorelli under Section 8−107(1)(a) of the NYCHRL, and do not seek dismissal of that claim. (Dkt. 20 at 22, n.3)

By contrast, an individual is subject to liability for discrimination under Section 296(1) of the NYSHRL only when that individual qualifies as an employer. *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012). "An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions

made by others.' " *Id.* (quoting *Patrowich v. Chem. Bank*, 63 473 N.E.2d 11, 12 (N.Y. 1984) (*per curiam*)); *see also Dantuono v. Davis Vision, Inc.*, 07 CV 2234, 2009 WL 5196151, at *10 (E.D.N.Y. Dec. 29, 2009) (employees or agents cannot be held liable unless they have an ownership interest, or powers to do more than carry out personnel decisions made by others, thus making them "employers"). Here, Plaintiff has not alleged that Dr. Santorelli had an employer-employee relationship with Plaintiff, or an ownership interest in NYMH, Plaintiff's employer. Nor has Plaintiff alleged that Dr. Santorelli had authority over the terms of Plaintiff's employment, such as the ability to hire and fire her or other NYMH employees, control their work schedules, or determine their rate or method of payment, or maintained employment records for any NYMH employees. *Griffin v. Sirva, Inc.*, 11 CV 1844, 2014 WL 2434196, at *11 (E.D.N.Y. May 29, 2014) (to determine whether an individual defendant has sufficient authority to be considered an employer, courts balance "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records") (quoting *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012)). Accordingly, Plaintiff's claim against Dr. Santorelli under Section 296(1) of the NYSHRL is dismissed.

### B. Direct Liability for Retaliation

**\*12** The NYSHRL and NYCHRL both permit individual liability of *any person* for retaliatory acts regardless of whether the individual can be considered an employer. N.Y. Exec. Law § 296(7) (providing that it is "an unlawful discriminatory practice for *any person* engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under [the NYSHRL]") (emphasis added); *see* NYCHRL § 8–107(1)(7) [14] (providing that "[i]t shall be an unlawful discriminatory practice for *any person* engaged in any activity to which [the NYCHRL] applies to retaliate or discriminate in any manner against any person because such person has [ ] opposed any practice forbidden by [the NYCHRL]") (emphasis added); *see also Malena*, 886 F. Supp. 2d at 366. However, as is clear from the text of the NYSHRL and the NYCHRL retaliation

provisions, individual liability under these provisions is limited to cases where "an individual defendant ... 'actually participates in the conduct giving rise to' the plaintiff's retaliation claim." *Hozer v. Pratt Indus. ( USA),* 10 CV 3874, 2012 WL 2049498, at *1 n.1 (E.D.N.Y. June 6, 2012) (internal quotation marks and citation omitted); *see also Edwards v. Jericho Union Free Sch. Dist.,* 904 F. Supp. 2d 294, 306 (E.D.N.Y. 2012). [15] Here, Plaintiff's claims must be dismissed because her allegations do not give rise to a plausible inference that Dr. Santorelli participated in any retaliatory conduct. Plaintiff alleges only that Dr. Santorelli sexually harassed her, but not that he retaliated against her for complaining about the harassment. Plaintiff's retaliation allegations are limited to Defendant Torres and personnel other than Dr. Santorelli. (Compl. ¶ 333 (alleging that Defendants retaliated against Plaintiff by "reassigning the work of other employees to her, by making baseless attacks upon her work performance, refusing to allow her to take vacation time[,]" "ostracizing her socially," "verbally abusing her," "calling her names, such as 'viper' and 'pain in the ass,' " "writing her up for 'chronic misuse of [NYMH's] complaint procedure,' " "warning her that [NYMH] 'will not tolerate the filing of frivolous or unfounded allegations,' " and "failing to follow [NYMH's] procedures for investigating complaints"); *see id.* at ¶¶ 102, 126, 160, 163−64176, 219231, 233, 239, 240, 245.) Plaintiff has not alleged that Dr. Santorelli had any role in the retaliatory actions alleged in the Complaint. Tellingly absent from the Complaint are any allegations that Dr. Santorelli had the authority to take any action that would affect the terms, conditions, and privileges of Plaintiff's employment. Accordingly, Dr. Santorelli may not be held directly liable, in his individual capacity, for retaliation under the NYSHRL and NYCHRL.

### C. Aider and Abettor Liability for Discriminatory or Retaliatory Conduct by Others

In addition to direct liability, the NYSHRL and NYCHRL each provide for individual liability for aiding and abetting discrimination or retaliation. *See* N.Y. Exec. Law § 296(6) (stating that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article [including discrimination and retaliation], or to attempt to do so"); NYCHRL § 8–107(1)(6) (providing that "[i]t shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so"); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Inc.,* 524 U.S. 742 (1998). Since the language of the NYSHRL and NYCHRL is virtually identical, both statutes are analyzed according to the same standard. *Davis-Bell v. Columbia Univ.,* 851 F. Supp. 2d 650, 687−88 (S.D.N.Y. 2012); *see also Dillon v. Ned Mgmt., Inc.,* 85 F. Supp. 3d 639, 658−59 (E.D.N.Y. 2015). [16]

The aider and abettor provisions of the NYSHRL and NYCHRL create a broad source of personal liability that is not limited to employers. *Stanley v. Guardian Sec. Servs., Inc.,* 800 F. Supp. 2d 550, 557 (S.D.N.Y. 2011). An individual need not have supervisory or hiring/firing power to be subject to suit under these provisions, so long as he actually participated in the conduct giving rise to the discrimination claim. *See Feingold,* 366 F.3d at 158 (individual liability may be imposed on a coworker who "actually participates in the conduct giving rise to a discrimination claim ... even though that co-worker lacked the authority to either hire or fire the plaintiff") (quoting *Tomka,* 66 F.3d at 1317). But, "before an individual may be considered as an aider and abettor," liability "must first be established as to the employer." *Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F. Supp. 2d 477, 490−91 (S.D.N.Y. 1999); *see also Irons v. BedfordStuyvesant Cmty. Legal Servs.,* 13 CV 4467, 2015 WL 5692860, at *32 (E.D.N.Y. Sept. 28, 2015) ("liability as an aider and abettor under section 296(6) can only attach when liability has been established as to the employer or another individual").

**\*13** In this case, Defendants' motion does not test the sufficiency of Plaintiff's allegations that NYMH, as her employer, and/or Defendant Torres, as her supervisor, may be liable for gender discrimination, hostile work environment, and retaliation. (*See* Dkt. 20 at 8.) The predicate liability of Plaintiff's employer is therefore uncontested. Defendants instead contend that Dr. Santorelli, as the person who committed the allegedly unlawful acts that produced the hostile work environment, cannot be held liable for aiding and abetting his own acts of discrimination. (*Id.*)

As Defendants correctly point out, district courts in this Circuit are not in agreement on whether an individual can be held liable for aiding and abetting his own conduct.

*See, e.g.*, *Fontecchio v. ABC Corp.*, 12 CV 6998, 2015 WL 327838, at *10 (S.D.N.Y. Jan. 23, 2015) (recognizing a disagreement between district courts and citing cases); *Romero v. City of New York*, 839 F. Supp. 2d 588, 635 (E.D.N.Y. 2012); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 115 (E.D.N.Y. 2011); *see also Raneri v. McCarey*, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010) (finding that "[a]n individual cannot aid and abet his own alleged discriminatory conduct" under Executive Law § 296(6)") (citation omitted)"); *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (dismissing NYSHRL claims against an individual because of the "requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor") (citation omitted). However, the Second Circuit held in *Tomka*, 66 F.3d at 1317, that a plaintiff's allegation that each of the individual defendants assaulted her and thereby created a hostile work environment was sufficient to satisfy the standard for aider and abettor liability under the NYSHRL. Since *Tomka* is the law in this Circuit, the Court agrees with the decisions holding that an individual can be held liable as an aider and abettor even though it was primarily his actions that make the employer liable —in effect, that he can aid and abet his own actions. *See, e.g.*, *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012) ("[T]he law in this Circuit seems clear that a defendant may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability."); *Anand v. N.Y. State Dep't of Taxation & Fin.*, 10 CV 5142, 2012 WL 2357720, at *10 (E.D.N.Y. June 18, 2012) (holding that individual defendants may be liable in their individual capacities for aiding and abetting their own conduct); *Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008); *Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 262–63 (E.D.N.Y. 2009).

In this case, Plaintiff's Complaint is replete with assertions that Dr. Santorelli "actually participated" in the alleged discriminatory conduct that produced the alleged hostile work environment. *See Johnson v. County of Nassau*, 10 CV 06061, 2014 WL 4700025, at *12, 25 (E.D.N.Y. Sept. 22, 2014); *Maher*, 650 F. Supp. 2d at 262-63. Furthermore, unlike cases where courts, including this Court, refused to find that an individual can aid and abet his own discriminatory acts, Dr. Santorelli's actions are not the sole predicate for NYMH's liability under the NYSHRL

and NYCHRL for fostering a hostile work environment. Plaintiff alleges that other doctors and personnel in the Department of Endoscopy participated in or condoned harassing behavior towards Plaintiff. (*See, e.g.*, Compl. ¶¶ 48, 55, 74–75, 89–90, 95, 98, 118, 121, 211, 214–16, 224–29.); *cf. Setelius v. Nat'l Grid Elec. Servs. LLC*, 11 CV 5528, 2014 WL 4773975, at *35 (E.D.N.Y. Sept. 24, 2014) (individual cannot be held liable under § 296(6) of the NYSHRL "in the absence of liability of the employer or another individual" who "contributed to the creation of an allegedly hostile work environment"); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) (no aider and abetter liability where only one individual is alleged to have participated in the discriminatory conduct); *Sanchez-Vazquez v. Rochester City Sch. Dist.*, 11 CV 6590, 2012 WL 2856824, at *6 (W.D.N.Y. July 11, 2012) (plaintiff did not assert a NYHRL claim against anyone other than alleged aider and abettor), *aff'd*, 519 Fed.Appx. 63 (2d Cir. 2013). Thus, the Court finds that Dr. Santorelli is subject to aider and abetter liability under the NYCHRL and NYSHRL with respect to Plaintiff's hostile work environment claim.

**\*14** On the other hand, the Complaint does not contain allegations sufficient to support Dr. Santorelli's individual liability for retaliation on an aider and abettor theory. As previously set forth, the Complaint is devoid of any allegation that Dr. Santorelli actually participated in the retaliatory conduct alleged by Plaintiff. *See Conklin*, 859 F. Supp. 2d at 437 (claim under NYSHRL 296(6) failed because individual defendant "did not participate in any of the alleged retaliatory actions" and "had no supervisory role and no control over the terms of the [p]laintiff's employment"); *cf. Vaigasi v. Solow Mgmt. Corp.*, 11 CV 5088, 2014 WL 1259616, at *7 (S.D.N.Y. Mar. 24, 2014) (plaintiff sufficiently alleged that co-employees were individually subject to suit where complaint alleged that they actively participated in plaintiff's demotion and the alteration of his job responsibilities). Accordingly, the NYHRL and NYCHRL retaliation claims against Dr. Santorelli are dismissed.

## V. Motion to Strike

FRCP 12(f) provides that the Court "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.' " *Crespo v.*

*N. Y. C. Transit Auth.*, 01 CV 0671, 2002 WL 398805, at \*11 (E.D.N.Y. Jan. 7, 2002) (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999)); *see also OTG Brands, LLC v. Walgreen Co.*, 13 CV 09066, 2015 WL 1499559, at \*5 (S.D.N.Y. Mar. 31, 2015) (a party seeking to strike allegations mush show that evidence in support of the allegation would be inadmissible, the allegations have no bearing on relevant issues, and permitting the allegations to stand would result in prejudice to the movant). As the Second Circuit has noted, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "Simply because a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) does not mean that allegations in support of that claim may as a matter of course be struck as immaterial, impertinent, or scandalous." *Anderson*, 850 F. Supp. 2d at 417; *see also Barcher v. N.Y. Univ. Sch. of Law*, 993 F. Supp. 177, 181 (S.D.N.Y. 1998) (granting motion to dismiss sexual harassment and retaliation claims and denying motion to strike allegations regarding sexual harassment).

Defendants move to strike all allegations of pre-April 2011 conduct that are time-barred or unexhausted. Defendants' request is denied. As previously discussed, the majority of Plaintiff's pre-April 2011 allegations are timely under the NYSHRL and NYCHRL and therefore relevant to Plaintiff's claims under those statutes. Additionally, the time-barred hostile work environment claims based on the 1993 and 1996 incidents need not be stricken, since these allegations may still serve "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. For the same reason, Plaintiff's time-barred retaliation claim based on the 2002 performance evaluation need not be stricken.

Defendants also seek to strike references to non-defendant individuals in the Complaint, including striking names in allegations post-dating April 2011, on the ground that these allegations are "of a scandalous and salacious nature", "ultimately cannot form the basis of timely or actionable claims", and serve "no legitimate purpose" except to "harm the personal and professional reputations" of referenced individuals. (Dkt. 20 at 8−9, 26 n.4−5.) It cannot be said, however, that the allegations concerning the non-defendant individuals can have no bearing on Plaintiff's action, as the crux of Plaintiff's claim is that she endured a hostile work environment at the Department of Endoscopy, where these non-

defendant individuals worked. Although Plaintiff is not advancing any claims against these individuals, the fact that they were present and may have encouraged or implicitly condoned Dr. Santorelli's harassment, or perpetrated harassment themselves, are certainly relevant to Plaintiff's hostile work environment claims. Accordingly, Defendants' motion to strike is denied.

## *CONCLUSION*

**\*15** In conclusion, Defendants' partial motion to dismiss certain claims pursuant to FRCP 12(b)(6) (Dkt. 17) is DENIED in part and GRANTED in part.

Defendants' motion is GRANTED with respect to Plaintiff's unexhausted Title VII hostile work environment claims based on (1) conduct that precedes April 1, 2011, and (2) sexually harassing conduct by individuals other than Dr. Santorelli. Defendants' motion is DENIED with respect to Plaintiff's exhausted Title VII hostile work environment claims based on (1) sexual harassment by Dr. Santorelli that occurred after April 1, 2011, and (2) the failure of NYMH management, including Defendant Torres, to respond to Plaintiff's complaints of harassment.

Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL hostile work environment claims premised on pre-April 2011 conduct as untimely is DENIED, with the exception of alleged conduct in 1993 and 1996.

In addition, Defendants' motion to dismiss is GRANTED with respect to claims against Dr. Santorelli in his individual capacity: (1) under the NYSHRL for (a) direct discrimination and hostile work environment (§ 296(1)), (b) direct retaliation (§ 296(7)), and (c) aiding and abetting retaliation (§ 296(6)); and (2) under the NYCHRL for (a) direct retaliation (§ 8− 107(1)(7)) and (b) aiding and abetting retaliation (§ 8−107(1)(6)). Defendants' motion is DENIED with respect to Plaintiff's claims against Dr. Santorelli in his individual capacity for (1) aiding and abetting discrimination and hostile work environment under the NYSHRL (§ 296(6)) and NYCHRL (§ 8−107(1) (6)), and (2) under the NYCHRL for direct discrimination and hostile work environment (§ 8−107(1)(a)).

Finally, Defendants' motion to strike certain allegations pursuant to FRCP 12(f) is DENIED in its entirety.

SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 3561705

Footnotes

1    Citations to the documents filed on this Court's electronic docket refer to the pagination assigned by the ECF system.

2    For purposes of deciding the pending motion, the Court accepts as true all well-pleaded allegations in the Complaint and draws all reasonable inferences Plaintiff's favor. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *see Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014); *Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir. 2006).

3    The Complaint does not indicate whether Plaintiff reported the 1993 incident. (*See* Compl. ¶¶ 19-20.)

4    Plaintiff clarified at a May 11, 2015 Court conference that she is not pursuing Title VII claims against Defendant Torres and Dr. Santorelli. (Dkt. 16 at 17.) It is well-established that Title VII does not contemplate personal liability for individuals. *Lore v. City of Syracuse,* 670 F.3d 127, 169 (2d Cir. 2012); *Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir. 2004). Furthermore, while the Second Circuit has not explicitly decided whether Title VII permits suits against individuals in their official capacities, recent district court decisions have rejected Title VII official capacity claims as duplicative of a plaintiff's claims against her employer. *See, e.g., Jeune v. City of New York,* 11 CV 7424, 2014 WL 83851, at *3 (S.D.N.Y. Jan. 9, 2014); *Pietri v. N.Y.S. Office of Court Admin.,* 936 F. Supp. 2d 120, 133 (E.D.N.Y. 2013); *Emmons v. City Univ. of N.Y.,* 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010).

5    The Charge may be considered in connection with Defendants' motion to dismiss because, for purposes of FRCP 12, "the complaint is deemed to include any ... statements or documents incorporated in it by reference ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner. Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002). Here, paragraphs 6 and 7 of the Complaint incorporate the Charge by reference. *See Briggs v. N.Y. State Dep't of Transp.,* 233 F. Supp. 2d 367 (N.D.N.Y. 2002).

6    There is a four-day discrepancy between the Charge and Complaint regarding the exact date on which this conduct occurred. (*Compare* Dkt. 18-SYM>>2 at 4 *with* Compl. ¶¶ 167-68.) Insofar as the exact date is material to Plaintiff's claims, this factual discrepancy may be resolved by further discovery.

7    That Plaintiff's Complaint describes more egregious conduct by Dr. Santorelli than in her Charge, including overtly sexualized statements, sexual favors and gestures, and physical exposure and contact (*see* Dkt. 20 at 19), does not alter this conclusion. The Court views these additional allegations as amplification and support for Plaintiff's properly exhausted hostile work environment claims against NYMH. *DeBerry,* 11 F. Supp. 3d at 396 ("[T]here is a difference between new unexhausted claims and factual allegations that are pled in a complaint but omitted from an EEOC charge which only serve to amplify and support the properly exhausted claims.").

8    The Court also concludes, and Defendants apparently do not dispute, that Plaintiff's remaining Title VII claims for retaliation and constructive discharge are properly exhausted. Plaintiff's allegations of retaliation in her EEOC Charge are reasonably related to those in her Complaint in that they describe the same incidents of retaliatory conduct, or constitute "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft,* 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts,* 990 F.2d at 1402–03).

9    Because the Court has determined that Plaintiffs' Title VII hostile work environment claims based on conduct prior to April 2011 are not exhausted and must be dismissed on that ground, the Court need not address Defendants' alternative argument that such claims must also be dismissed as untimely under Title VII's 300-day limitations period. *See* 42 U.S.C. § 2000e-5e(1) (plaintiff seeking to bring claims pursuant to Title VII must file a complaint with the EEOC or equivalent State agency within 300 days of the alleged discriminatory act). Furthermore, Defendants did not raise the argument that Title VII claims based on conduct after April 2011 but prior to June 5, 2013—300 days prior to her April 1, 2014 Charge —may also be untimely under Title VII. (*See* Dkt. 20 at 11 (limiting timeliness arguments to allegations prior to 2011).) In any event, for the reasons set forth in this section, the Court views Plaintiff's post-April 2011 allegations as part of Plaintiff's timely hostile work environment claim, and accordingly would find Plaintiff's Title VII claims based on these allegations timely under the continuing violation doctrine.

10   *Compare Sotomayor,* 862 F. Supp. 2d at 250 (applying *Morgan* to NYSHRL claims), *and Bermudez v. City of New York,* 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) ("The standard for applying the continuing-violation doctrine to claims under the NYCHRL and the NYSHRL is also governed by *Morgan*"), *with Dimitracopoulos v. City of New York,* 26 F. Supp. 3d

200, 212 (E.D.N.Y. 2014) ("New York courts have held that the pre-*Morgan*, more generous continuing violations doctrine continues to apply to discrete acts of employment discrimination under NYCHRL.") (citing *Williams*, 872 N.Y.S.2d at 35).

11    *See Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 84 (2d Cir. 2001) ("Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception."), *abrogated on other grounds by Morgan*, 536 U.S. at 122; *Deras*, 2013 WL 1193000, at *6 (three-year gap between incidents belies the notion that the incidents were connected or ongoing in nature).

12    Neither Plaintiff's Complaint nor her opposition to Defendants' motion appears to assert a claim for retaliation prior to April 2011 based on a continuing violation theory. (*See* Dkt. 23 at 5-8, 9-13.) Nor would such a claim survive. The sole instance of retaliatory conduct that occurred outside the limitations period involved a 2002 negative performance evaluation by Defendant Torres. (*See* Compl. ¶¶ 32-34 (alleging that Defendant Torres noted on Plaintiff's 2002 performance review that she "needed to be more patient, and less critical, of her coworkers").). This negative evaluation is a discrete act that is time-barred under *Morgan*. *Valtchev v. City of New York*, 400 Fed.Appx. 586, 589 (2d Cir. 2010) (holding that negative evaluations are discrete acts which do not trigger the continuing violation exception); *Kalola*, 2015 WL 861718, at *4 (E.D.N.Y. Feb. 3, 2015) ("[A] negative performance evaluation is a discrete act."). Even applying the more liberal continuing violation doctrine, the 2002 performance evaluation cannot be construed as part of a course of retaliatory conduct that continued into the limitations period because it does not directly bear on, or relate to, Plaintiff's timely allegations, a decade later, of a policy of retaliation and ostracization for her submission of complaints outside the Department of Endoscopy. *See Dimitracopoulos*, 26 F. Supp. 3d at 212 (negative rating by a prior supervisor was not part of the same continuing pattern of discriminatory conduct as later evaluations and letters by separate individuals). Accordingly, the 2003 performance evaluation is not part of Plaintiff's retaliation claim, but is only relevant as potential evidence of Defendant Torres's alleged failure to appropriately respond to Plaintiff's complaints of sexual harassment in 2002.

13    As part of their motion, Defendants submitted an undated declaration signed by Dr. Santorelli (Dkt. 19). The Court disregards the declaration since Plaintiff did not incorporate it in her Complaint, nor rely upon it to formulate her claims. *See Chambers*, 282 F.3d at 153.

14    Plaintiff erroneously cites to 8-107(1)(a) as NYCHRL's retaliation provision. (Dkt. 23 at 15.) Contrary to Defendants' suggestion (Dkt. 21 at 13), the Court does not view this error to constitute abandonment of Plaintiff's NYCHRL retaliation claim.

15    "To state a claim for retaliation [under NYSHRL or NYCHRL] ..., a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)).

16    Defendants correctly point out that Plaintiff's opposition carelessly omits any discussion of the NYCHRL's aiding and abetting provision. (Dkts. 21 at 13; 23 at 14-15.) However, since this provision is subject to the same analysis as the NYSHRL's parallel provision, the Court declines to find that Plaintiff abandoned her claim that Dr. Santorelli is liable under NYCHRL as an aider and abettor of unlawful conduct.

---

**End of Document**                                                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.