UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

SYLVIA PEREZ,

                Plaintiff,

      -v-                                      6:16-CV-795

RUBY TUESDAY, INC.,
ROBERTA BRIGGS,
General Manager, and
GARY COLE, Manager,

                Defendants.

--------------------------------

APPEARANCES:                                  OF COUNSEL:

SYLVIA PEREZ
Plaintiff, Pro Se
229 Grand Street
Amsterdam, NY 12010

LITTLER, MENDELSON LAW FIRM          A. MICHAEL WEBER, ESQ.
Attorneys for Defendants                     SHAWN MATTHEW CLARK, ESQ.
900 Third Avenue
New York, NY 10022

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On July 1, 2016, pro se plaintiff Sylvia Perez ("Perez" or "plaintiff") filed this civil rights action against defendants Ruby Tuesday, Inc. ("Ruby Tuesday"), General Manager Roberta Briggs ("GM Briggs"), and Manager Gary Cole ("Manager Cole") (collectively "defendants").

Perez asserted claims for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and of the New York State Human Rights Law ("NYSHRL"). Along with her complaint, plaintiff also filed an application for leave to proceed in forma pauperis ("IFP application") and a motion seeking the appointment of counsel.

On July 14, 2016, U.S. Magistrate Judge Therese Wiley Dancks issued an Order and Report–Recommendation (the "July 14 R&R") granting Perez's IFP application and denying without prejudice her request for counsel. In light of plaintiff's newly granted IFP status, Judge Dancks also conducted an initial screening of the complaint in accordance with the provisions set forth in 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii).

Based upon this initial review, Judge Dancks recommended that Perez's Title VII retaliation claim be permitted to proceed against Ruby Tuesday. Judge Dancks also recommended that plaintiff's NYSHRL retaliation claim be permitted to proceed against all three named defendants.

However, Judge Dancks concluded that Perez's Title VII retaliation claims against GM Briggs and Manager Cole should be dismissed with prejudice because Title VII did not provide for individual liability. Over plaintiff's objection, this Court adopted in full the findings of the July 14 R&R.

On May 14, 2018, defendants moved to compel arbitration of the remaining claims and to dismiss Perez's complaint. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

During the time period relevant to her claims, Perez worked at the Ruby Tuesday restaurant in Amsterdam, New York. Tillman Decl. ¶ 3. On July 15, 2015, plaintiff filed an

administrative charge of discrimination against Ruby Tuesday alleging violations of Title VII and the Equal Pay Act. Compl. ¶ 8. The parties settled these alleged violations in an agreement executed on November 6, 2015. Id. The agreement included a "no retaliation" provision. Id.; see also Dkt. No. 6.

Perez continued to work for Ruby Tuesday after this settlement. On March 13, 2016, she was working her shift as a Host at Ruby Tuesday when Manager Cole "violently shoved" her from behind. Compl. ¶ 8. Plaintiff immediately confronted him but received no response, so she told Nicolle Bahruth, the other Manager on duty that day, about the incident. Id. She too failed to respond. Id.

Fearing a further assault from Manager Cole, Perez informed Manager Bahruth that she was leaving the restaurant due to "feeling Fight or Flight." Compl. ¶ 8. After she left, plaintiff immediately contacted GM Briggs through the Ruby Tuesday "HotSchedules Messaging" system. Id. GM Briggs did not respond. Id.

The next day, Perez filed a complaint with the Montgomery County Sheriff's Department. Compl. ¶ 8. Thereafter, plaintiff "repeatedly contacted" the Ruby Tuesday "Corporate Office Employee Complaint Hotline" and left messages asking for someone to call her back about filing a complaint of assault. Id. Eventually, an unnamed Ruby Tuesday employee called her back and took her complaint. Id. However, plaintiff never received a response. Id.

On April 5, 2016, Perez filed a new administrative charge of discrimination against Ruby Tuesday. Compl. ¶ 10. Plaintiff's new charge complained of two related acts of retaliation that she alleged resulted from animosity about her earlier settlement: first, that Manager Cole shoved her on March 13 and second, that GM Briggs and Ruby Tuesday

failed to follow the company's employee complaint process in response to her report of Manager Cole's attack. Compl. ¶ 10. The U.S. Equal Employment Opportunity Commission ("EEOC") dismissed plaintiff's complaint and sent her a right-to-sue letter, which she received on April 20, 2016. Id. ¶ 11. This action followed.

## III. LEGAL STANDARD

"A motion to compel arbitration is reviewed under a summary judgment standard, and may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Thomas v. Public Storage, Inc., 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) (citation and internal quotation marks omitted); see also Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment."). "In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law." Thomas, 957 F. Supp. 2d at 499 (citation omitted). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." Id.

## IV. **DISCUSSION**[1]

Defendants have moved to compel arbitration and to dismiss Perez's complaint based on a "Fair and Impartial Resolution Policy Through Arbitration" (the "Agreement") they claim plaintiff executed as a condition of her continued employment with Ruby Tuesday. Tillman Decl., Dkt. No. 21-2, ¶¶ 7-9. According to defendants, beginning in early 2016 all employees were asked to review and electronically sign the Agreement on a restaurant computer during one of their shifts. Id. ¶ 8.

The two-page Agreement contains a short preamble followed by a list of six conditions, first in English and then in Spanish. Ex. A to Tillman Decl. Among other things, the Agreement provides that "[a]ny and all disputes or controversies arising out of or relating to any aspect of your employment . . . shall be finally and exclusively resolved by confidential arbitration." Id. It further provides that this arbitration "shall be subject to and governed by the Federal Arbitration Act, 9 U.S.C. Section 1 et seq." Id. And it states that "[t]he enforceability of this policy, the scope of arbitrability and all other questions shall be determined by the arbitrator." Id.

The bottom of the final page of the Agreement contains a bolded and underlined subsection entitled "Employee Acknowledgment," again in both English and Spanish. Ex. A to Tillman Decl. There, the Agreement states that "[m]y electronic signature below confirms that (a) I have received, read, and understand the Ruby Tuesday Arbitration Policy; and

---

[1] After Judge Dancks issued the July 14 R&R, this action languished for approximately a year before defendants made the instant motion to compel arbitration. According to their filings, plaintiff failed to perfect service on any of the named defendants until some time after a phone conversation that took place with one of defendants' attorneys, either on July 7, 2017 or possibly April 9, 2018. Dkt. No. 16. Those issues have since been resolved, either through procedurally adequate service or waiver. See Defs.' Mem. at 7 (discussing procedural history); see also Clark Decl. ¶ 2 & n.1.

- 5 -

(b) I understand and agree to be bound by same as it relates to my employment with Ruby Tuesday." Id. Defendants have included with their motion a version of the Agreement bearing plaintiff's electronic signature. Ex. B to Clark Decl. According to defendants, plaintiff signed the Agreement during her shift on February 29, 2016. Tillman Decl. ¶ 9; Clark Decl. ¶ 5.

Perez argues otherwise. Her one-page responsive submission denies any knowledge of the Agreement and asserts that she did not accept its terms. According to plaintiff, she could not have electronically signed the Agreement on February 29, 2016 "at 11:56 p.m." because she would not have been at the restaurant then. Pl.'s Opp'n ¶¶ 1-3.

In reply, defendants note that Perez does not deny that her employment claims would fall within the scope of the Agreement (if it applied) or that her claims would be arbitrable in accordance with its provisions (if she had signed it). As to plaintiff's apparent attempt to advance a complete denial of knowledge, acceptance, or receipt of the Agreement, defendants have two responses.

First, they offer a timecard record to buttress their claim that Perez did in fact sign the Agreement on the date and time identified in their initial moving papers. Ex. A to Tillman Reply Decl.[2] Second, defendants contend that plaintiff's claims would be subject to arbitration even if she failed to sign the Agreement. According to them, plaintiff's decision to

---

[2] As defendants explain, the electronic signature at issue uses Greenwich Mean Time in a 24-hour format. Tillman Reply Decl. ¶ 11. Thus, plaintiff's electronic signature on the document, which shows as being signed on "23:56:59 + 00:00," is actually equivalent to 6:56:59 p.m. Eastern Time in Amsterdam, New York, where the restaurant is located. Id. ¶ 12. Properly understood, then, the signature occurred at a time of the day that falls squarely within plaintiff's roughly three-hour shift at the restaurant that evening. Id. ¶¶ 12-13.

- 6 -

continue working at Ruby Tuesday even after the arbitration policy took effect company-wide amounts to a legally sufficient manifestation of assent under New York law.

The legal backdrop to the parties' dispute is the Federal Arbitration Act ("FAA"), which "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." Begonja v. Vornado Realty Trust, 159 F. Supp. 3d 402, 408 (S.D.N.Y. 2016) (quoting Mitsubishi Motor Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 625 (1985)); see also 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

Where, as here, a party seeks to compel another to arbitrate their dispute, a court must examine: "(1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." Begonja, 159 F. Supp. 3d at 408-09.

The principal element at issue in this case is the first one: did the parties actually agree to arbitrate? That question is answered by examining state contract law. Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law.").

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted). "A contract may be formed by words or by conduct that demonstrates the parties' mutual assent." Manigault v. Macy's East, LLC, 318

F. App'x 6, 8 (2d Cir. 2009) (summary order). For instance, "[a]n employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." Id.

Upon review of the submissions, defendants have carried their burden of demonstrating that the parties agreed to arbitrate pursuant to the Agreement, a copy of which was electronically signed by Perez. Begonja, 159 F. Supp. 3d at 409 ("The party moving to compel arbitration must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'").[3]

This is because Perez's refusal is made without the support of a shred of evidence that might cast doubt on the authenticity of the various exhibits marshaled by defendants in support of their contrary position. See, e.g., Gonder v. Dollar Tree Stores, Inc., 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015) (rejecting similar refusal to acknowledge electronic signature where "[n]othing in the record (other than [plaintiff's] bald assertion to the contrary in his opposition)" suggested it was invalid).

Accordingly, Perez's self-serving refusal to acknowledge the fact of her signature on the document is insufficient to raise a genuine dispute of fact about this all-important threshold question. Begonja, 159 F. Supp. 3d at 409 ("Subsequently, the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'").

---

[3] Importantly, "[t]he moving party need not 'show initially that the agreement would be *enforceable*, merely that one existed.'" Begonja, 159 F. Supp. 3d at 409 (emphasis in original).

The remaining elements necessary to trigger arbitration have also been satisfied. The plain language of the Agreement indicates that it reaches "any and all disputes or controversies arising out of or relating to any aspect of [plaintiff's] employment with [ ] Ruby Tuesday."

This kind of broad language has been held to cover claims arising from Title VII and the NYSHRL. See, e.g., Wenchun Zheng, Ph.D v. Gen. Elec. Co., 2016 WL 3212092, at *3 (N.D.N.Y. June 9, 2016) (McAvoy, J.) (collecting cases establishing arbitrability of federal and state discrimination claims). Accordingly, defendants' motion to compel arbitration will be granted.

## V. **CONCLUSION**

Having determined that defendants are entitled to compel arbitration, the remaining question is whether to dismiss the action or enter a stay. Where, as here, "a stay is not requested, a district court has discretion in determining whether to stay or dismiss the case pending arbitration." Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018); see also Benzemann v. Citibank N.A., 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (affirming propriety of dismissal where plaintiff did not request a stay).

Under the particular circumstances of this case, a dismissal is the appropriate course of action here.

Therefore, it is

ORDERED that

1. Defendants' motion to compel arbitration is GRANTED; and

2. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion and to close the file.

IT IS SO ORDERED.

Dated: January 28, 2019
      Utica, New York.

_____
United States District Judge